UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ABG INTERMEDIATE HOLDINGS 2, LLC
and ABG-SPG ES, LLC,

               Plaintiffs,

        -against-

BOLT FINANCIAL, INC.,

               Defendant.

Case No. 22-CV-00473 (LAK)

## DEFENDANT BOLT FINANCIAL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STAY DISCOVERY

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .................................................................................................................3

ARGUMENT......................................................................................................................4

I.      BOLT HAS MADE A STRONG SHOWING THAT THIS CASE LACKS
        MERIT ...................................................................................................................5

II.     THE BURDEN OF RESPONDING TO DISCOVERY WOULD BE GREAT
        GIVEN THE NATURE OF THE CLAIMS AND THE PROPRIETARY
        INFORMATION AT ISSUE .............................................................................................9

III.    PLAINTIFFS WOULD SUFFER NO PREJUDICE FROM A BRIEF STAY.................11

CONCLUSION...................................................................................................................12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Boelter v. Hearst Commc'ns., Inc.*,
No. 15-CV-03934(AT), 2016 WL 361554 (S.D.N.Y. Jan. 28, 2016) ................................. 5, 9

*Integrated Sys. And Power, Inc. v. Honeywell Int'l, Inc.*,
No. 09-CV-5874(RPP), 2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009).................................. 5

*Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
595 F.3d 458 (2d Cir. 2010).................................................................................. 10

*Negrete v. Citibank, N.A.*,
No. 15-CV-7250(RWS), 2015 WL 8207466 (S.D.N.Y. Dec. 7, 2015) ......................... 5, 9, 12

*Niv v. Hilton Hotels Corp.*,
No. 06 CIV. 7839(PKL), 2007 WL 510113 (S.D.N.Y. Feb. 15, 2007)................................. 9

*Olin Corp. v. Am. Home Assur. Co.*,
704 F.3d 89 (2d Cir. 2012).................................................................................... 7

*O'Sullivan v. Deutsche Bank AG*,
No. 17-CV-8709 (LTS), 2018 WL 1989585 (S.D.N.Y. Apr. 26, 2018)............................. 11

*Rivera v. Heyman*,
No. 96 Civ. 4489, 1997 WL 86394 (S.D.N.Y. Feb. 27, 1997) ................................... 11

*Sanders v. Grenadier Realty, Inc.*,
367 F. App'x 173 (2d Cir. 2010) ......................................................................... 8

*Spencer Trask Software and Info. Servs., LLC v. RPost Int'l Ltd.*,
206 F.R.D. 367 (S.D.N.Y. 2002) ................................................................... 4, 5, 9

*Spinelli v. Nat'l Football League*,
No. 13-CV-7398(RWS), 2015 WL 7302266 (S.D.N.Y. Nov. 17, 2015) ......................... 4, 12

**Rules**

Fed. R. Civ. P. 26.............................................................................................. 4

Fed. R. Civ. P. 26(f).......................................................................................... 4

Defendant Bolt Financial, Inc. ("Bolt") respectfully submits this memorandum of law in support of its motion to stay discovery pending the Court's resolution of Bolt's motion to dismiss Plaintiffs' First Amended Complaint, filed contemporaneously herewith.

## PRELIMINARY STATEMENT

Although filing a motion to dismiss does not automatically stay discovery, there is good cause for a court to exercise its discretion to impose such a stay where (1) there are substantial arguments for dismissing all or a portion of the plaintiff's claims, (2) the burden and expense of complying with discovery would be significant, and (3) there will be no prejudice from a stay. Here, each of these established factors strongly support staying discovery pending the Court's decision on Bolt's contemporaneously filed motion to dismiss.

*First*, Bolt's motion to dismiss illuminates that, at its core, Plaintiffs' case is extraordinarily weak; it is simply an improper attempt to retrade extensively negotiated, unambiguous agreements, and to allege a number of implausible claims in a transparent effort to create settlement leverage over Bolt. This lawsuit centers around the AllPass program, a cross-brand loyalty program that Plaintiffs dreamed up. If and when Plaintiffs ever launch that program, it will utilize a white-labeled version of Bolt Checkout, a product that has been in existence for years, as well as additional technology Bolt developed and has made available since early 2021. As part of the agreements establishing that program, Bolt agreed that Plaintiff ABG Intermediate Holdings 2, LLC ("ABG") could obtain warrants for up to 5% of Bolt's equity *if* it delivered on enrolling so-called "ABG Brand Partners" in the AllPass program that then used Bolt products for at least $750 million in ecommerce transactions within two years of entering the agreements (*i.e.*, by October 2022). ABG has not delivered on those enrollments with just over seven months to go, and thus has not made progress on earning the warrants. In the meantime, however, Bolt's value has ballooned due to the industry's recognition that its online checkout products are best-in-class.

1

Plaintiffs therefore desire to seize for themselves a significant stake in an increasingly valuable technology company without doing any of the work to justify that windfall.

Plaintiffs' problem, however, is that their own allegations make it abundantly clear that ABG has not met its agreed-to obligations in order to earn and exercise the warrants. Moreover, Plaintiffs' allegations depend on plainly incorrect interpretations of the operative agreements—ones that either read out critical provisions entirely (as in their original complaint), or which urge the court to interpret provisions (*e.g.*, "enrollment") against their plain *and* contextual meaning (as in their FAC)—and their other claims either duplicate the faulty contract claims or proceed on theories for which Plaintiffs have no standing (*e.g.*, trademark and false advertising claims for marks neither Plaintiff owns) or identify no actionable conduct (*e.g.*, false advertising claims that involve no advertisements). All of this shows that Bolt does not just raise substantial dismissal arguments, but rather raises arguments that are likely to dispose of the entire case.

*Second,* Plaintiffs' allegations—despite being deficient on their face or otherwise factually without merit—implicate months-long contract negotiations, the development of Bolt's proprietary and cutting-edge technology, the ownership of various intellectual property rights, and other issues that necessarily would entail invasive, expensive, and far-reaching discovery of commercially sensitive information. Resolving even some of the claims in the case by way of dismissal will substantially narrow the focus of discovery and thus avoid unnecessary burden and expense. This concern is particularly acute for Bolt, a rapidly growing company with a groundbreaking new technology. Allowing discovery to proceed full steam ahead now risks not only an unnecessary expense of the parties' and the Court's resources, but also the unnecessary disclosure of Bolt's "secret sauce," which Bolt has worked years to develop in an effort to revolutionize online commerce.

*Finally*, this case is still in its infancy, and waiting to begin discovery until after the Court decides Bolt's pending motion will not prejudice Plaintiffs' ability to prosecute any claims that survive dismissal. Both parties have taken steps to preserve potentially relevant evidence, and Plaintiffs are not requesting any immediate relief that requires discovery now. Courts in this District have consistently held that a reasonable delay in lieu of a dispositive motion does not cause prejudice.

## **BACKGROUND**

Plaintiffs filed this lawsuit on November 28, 2021, in New York state court. After removing the action to this Court based on federal question jurisdiction, Bolt moved to dismiss Plaintiffs' original Complaint in its entirety. Instead of opposing Bolt's motion to dismiss, Plaintiffs filed a First Amended Complaint ("FAC") on March 4, 2022. Wolfson Decl. Exhibit 9.[1] The FAC asserts claims for breach of contract, declaratory judgment, breach of the implied covenant of good faith and fair dealing, unjust enrichment and *quantum meruit*, trademark infringement/unfair competition, and false advertising. In reality, the case plainly centers around the warrants for Bolt's common stock. Plaintiffs seek a declaration that ABG should be entitled to exercise warrants to purchase up to 5% of Bolt's equity, notwithstanding Plaintiffs' concession that ABG has not achieved the contract's unambiguous economic threshold that would entitle it to do so. *See Id.* ¶¶ 125-31, 181-92. Plaintiffs also contend that Bolt failed to develop or deliver its online-checkout technology in a timely manner, and that Bolt used Plaintiffs' intellectual property without permission or otherwise disclosed confidential information and issued unapproved press releases. *Id.* ¶¶ 157-80, 211-46. Despite Plaintiffs' opportunity to amend, the FAC does not cure the

---

[1]    Citations to the "Wolfson Decl." refer to the Declaration of Adam Wolfson in support of Defendant's Motion to Dismiss the First Amended Complaint, which has been filed contemporaneously with this motion. Citations to the "Jobe Decl." refer to the Declaration of Phillip B. Jobe in support of Defendant Bolt Financial, Inc.'s Motion to Stay Discovery.

fundamental deficiencies in Plaintiffs' claims. Bolt therefore has again moved to dismiss the action in its entirety (via a motion to dismiss filed contemporaneously with this motion to stay), largely on the same grounds as in its original motion to dismiss. *See* Memo of Law in support of Defendant's Motion to Dismiss the FAC ("MTD Br.").

Although Bolt is moving for a stay of discovery, it has nonetheless been working diligently to advance the discovery process in accordance with the currently-operative schedule that the Court set at the February 2, 2022 status conference. Following a Rule 26(f) conference on March 11, 2022 (during which Bolt made clear that it intended to move to stay discovery, as the Court stated it could do), Plaintiffs served Bolt with initial discovery requests. Jobe Decl. Exhibit A. Bolt thereafter served its own initial discovery requests while again noting that it intended to seek to stay discovery pending its motion to dismiss. The parties will be filing their Rule 26(f) proposed discovery plan with the Court on March 25 and exchanging initial disclosures on April 8.

## ARGUMENT

There is "good cause" for the Court to exercise its broad discretion under Rule 26 and stay discovery until it resolves Bolt's motion to dismiss the Amended Complaint. "Good cause" for a stay exists where, as here, "a party has filed a dispositive motion, the stay [would be] for a short period of time, and the opposing party will not be prejudiced by the stay." *Spencer Trask Software and Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002). In exercising their discretion whether or not to impose a temporary stay pending a motion to dismiss, courts in this District have long evaluated three principal factors: "1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, 2) the breadth of discovery and the burden of responding to it, and 3) the risk of unfair prejudice to the party opposing the stay." *Spinelli v. Nat'l Football League*, No. 13-CV-7398 (RWS), 2015 WL 7302266, at *2 (S.D.N.Y. Nov. 17, 2015). All three factors weigh in favor of a stay here.

# I. **BOLT HAS MADE A STRONG SHOWING THAT THIS CASE LACKS MERIT**

Courts in this District routinely stay discovery where a defendant "appear[s] to have substantial arguments for dismissal of many, if not all, of the claims asserted." *Spencer Trask*, 206 F.R.D. at 368 (granting stay). The Court need not make a finding "as to whether [the motion to dismiss] will ultimately succeed or fail" to find that this factor counsels in favor of a stay. *Negrete v. Citibank, N.A.*, No. 15-CV-7250 (RWS), 2015 WL 8207466, at *1 (S.D.N.Y. Dec. 7, 2015); *see also Spencer Trask*, 206 F.R.D. at 368 ("This Court cannot attempt to predict the outcome of the motion to dismiss … [but] the Court notes at this preliminary stage that defendants do appear to have substantial arguments for dismissal."). Instead, a stay is appropriate where the motion "is potentially dispositive, and appears to be not unfounded in the law." *Negrete*, 2015 WL 8207466, at *1; *Boelter v. Hearst Commc'ns., Inc.*, No. 15-CV-03934 (AT), 2016 WL 361554, at *5 (S.D.N.Y. Jan. 28, 2016) (granting stay where "none [of defendant's arguments for dismissal] are frivolous"); *Integrated Sys. And Power, Inc. v. Honeywell Int'l, Inc.*, No. 09-CV-5874 (RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (granting stay where, "after an initial review, the Court notes Honeywell has put forth in its motion multiple, independent arguments for dismissal and the motion appears to be not unfounded in the law" (quotations omitted)).

Here, Bolt has presented substantial arguments for dismissal of Plaintiffs' entire case. Bolt respectfully refers the Court to the full arguments in its motion to dismiss but briefly summarizes here the arguments for dismissal of Plaintiffs' core claims, which turn on straightforward contractual language that requires no discovery to interpret, uncontested facts that Plaintiffs do not own any trademarks for ABG Brand Partners, false advertising claims that identify no advertisements, and purely legal arguments about Plaintiffs' lack of standing for their Lanham Act and New York state false advertising claims.

As noted above, the heart of this case is Plaintiffs' request for declaratory relief related to the Warrant. Plaintiffs essentially request a declaration that the Warrant and the Program Agreement do not say what they actually say. The Warrant provides Plaintiffs a conditional right to purchase up to 5% of Bolt's common stock once they achieve $750 million worth of "GMV Contribution." Wolfson Decl. Ex. 2 § 2. GMV Contribution is expressly defined in the Program Agreement as "the total financial amount of ecommerce transactions that are processed through any of the Bolt Products … of those ABG Participating Brand Partners and Merchant Referrals **_who have enrolled in AllPass_**." Wolfson Decl. Ex. 1 § 1.23 (emphasis added). The Warrant expires two years after its issuance if that threshold is not met. Wolfson Decl. Ex. 2 § 2.

Facing the reality that they will not achieve the amount of GMV Contribution ABG bargained for and agreed to, Plaintiffs have resorted to litigation and are asking the Court to dramatically rewrite their deal with Bolt. Plaintiffs seek a declaration that certain brand partners have "enrolled" in AllPass and are thus earning GMV Contribution, even though Plaintiffs concede that those brand partners have only supposedly "committed" to enrolling in AllPass at some undefined time in the future (but not actually entered into an official enrollment agreement for AllPass). *See* Wolfson Decl. Ex. 9 ¶¶ 125, 189. Beyond that, Plaintiffs want the Court to find that the two-year earnings window for GMV Contribution was "tolled … at least lasting until twenty-one months after November 2021," and that the GMV Contribution requirement should be deemed satisfied due to Bolt's purported breaches as well as Plaintiffs' unfounded and untrue speculation that Bolt has entered into a transaction that would void the requirement. *Id.* ¶ 189. In essence, Plaintiffs are asking for an immediate windfall allowing them to purchase 5% of a company valued at $11 billion for pennies on the dollar—notwithstanding that ABG has come nowhere close to generating the economic benefit Bolt bargained for.

As Bolt argues in its motion to dismiss, "the words and phrases [in a contract] should be given their plain meaning," and the language the parties agreed to here forecloses Plaintiffs' requested relief. *Olin Corp. v. Am. Home Assur. Co.,* 704 F.3d 89, 99 (2d Cir. 2012). *First*, ABG does not earn GMV Contribution unless its brand partners have "enrolled in AllPass." Wolfson Decl. Ex. 1 § 1.23. ABG's vague assertions that two brand partners have supposedly committed to enrolling in AllPass at some later date does not change the fact that they have not done so yet and therefore have not earned any GMV Contribution for ABG.[2] *Second*, Plaintiffs' interpretation of the Warrant as providing for a guaranteed twenty-one-month earnings window from the date "AllPass was up and running" (Wolfson Decl. Ex. 9 ¶ 134) is irreconcilable with Section 3.1 of the Program Agreement, which simply required Bolt to develop the basic technology that would power the AllPass Program "as soon as commercially reasonable"—which, incidentally, Bolt did. Wolfson Decl. Ex. 1 § 3.1. To muddy the waters, Plaintiffs try to confuse this obligation with Bolt's separate obligation to deliver AllPass Checkout—a white-labeled version of Bolt's preexisting Bolt Checkout product that would be one feature of the overall AllPass program—by January 15, 2021. *Id.*[3] But even a cursory review of Section 3.1 reveals this theory for the bait and switch that it is; Bolt's timeframes for developing the various technologies are clearly set out, as are the features of those different technologies—and there are no non-conclusory, plausible allegations that it failed to meet these obligations in any respect. *See* MTD Br., at 15-22.

---

[2]   ABG argues that it cannot enroll members in AllPass until Bolt has integrated AllPass Checkout and the additional Bolt Underlying Technology into their websites. *See, e.g.*, Wolfson Decl. Ex. 9 ¶17. That plainly is not what the parties' agreements say. The AllPass program clearly anticipates that the ABG-controlled NewCo (which will run the AllPass program) was supposed to begin enrolling AllPass members while Bolt was still developing the Bolt Underlying Technology. *See* Wolfson Decl. Ex. 1 § 2.1.

[3]   Plaintiffs do not allege (because they cannot) that Bolt did not deliver AllPass Checkout by January 15, 2021.

*Third*, Plaintiffs vaguely allege that Bolt "may have" entered into a transaction that would excuse Plaintiffs' GMV Contribution requirement (defined in the Warrant as a Qualifying Transaction) (*see* Wolfson Decl. Ex. 9 ¶¶ 140-42), but that allegation is based on unsupported, rank speculation that, in any event, is also completely untrue (and which Plaintiffs cannot say is actually true without violating Rule 11). Innuendo such as this does not plead a plausible basis for the Court to excuse the GMV Contribution requirement under the Warrant. *Sanders* v. *Grenadier Realty, Inc.*, 367 F. App'x 173, 175 n.2 (2d Cir. 2010) (a plaintiff must plead a basis for allegations made "on information and belief"). *Finally*, Plaintiffs' attempt to transform the Warrant's boilerplate Further Assurances clause (Wolfson Decl. Ex. 2 § 10.4) into a substantive provision that somehow obligates Bolt to amend the agreement for no additional consideration and extend Plaintiffs' window to achieve GMV Contribution is not a tenable reading of that clause, as numerous courts have held with respect to similar provisions. MTD Br., at 19-21.

Bolt also argues in its motion to dismiss that Plaintiffs' claims for breach of contract should be dismissed for failure to plead a plausible basis for relief. As noted above, Plaintiffs' claims for breach of Section 3.1 rest on the faulty premise that Bolt was required to finish development of the Bolt Underlying Technology by the hard cut-off date of January 15, 2021, as opposed to the contractual requirement that development be completed "as soon as commercially reasonable." Wolfson Decl. Ex. 1 § 3.1. The features of the Bolt Underlying Technology are spelled out in Exhibit A to the Program Agreement, and Plaintiffs do not contend Bolt failed to develop those specific features on a commercially reasonable timeframe. Instead, their complaints relate almost entirely to purported integration issues on certain brand partners' websites. *See* Wolfson Decl. Ex. 9 ¶¶ 84-100. These allegations are untethered from Bolt's actual obligations under the Program Agreement and thus warrant dismissal. MTD Br., at 11, 21-22. As to Bolt's supposed misuse of

trademarks and disclosure of confidential information, Plaintiffs' claims should be dismissed because (1) neither Plaintiff actually owns the trademarks that Bolt allegedly misappropriated, thereby depriving them of standing to sue for infringement of those marks; (2) Plaintiffs fail to identify what information Bolt disclosed that purportedly breached confidentiality provisions or only allege disclosure of information that judicially noticeable facts establish was already public; (3) for their false advertising claims, Plaintiffs fail to identify any actionable false advertisements; and (4) Plaintiffs identify no harm of the type covered by the Lanham Act or New York's equivalent state laws. These deficiencies are fatal to Plaintiffs' claims. *See* MTD Br., at 23-31.

Because Bolt not only has legitimate arguments for dismissal of Plaintiffs' core claims, but extremely strong dismissal arguments that will likely dispose of a core portion or all of this case, the first factor strongly weighs in favor of a stay.

## II.   THE BURDEN OF RESPONDING TO DISCOVERY WOULD BE GREAT GIVEN THE NATURE OF THE CLAIMS AND THE PROPRIETARY INFORMATION AT ISSUE

A stay of discovery also is warranted where "[t]he discovery requested by Plaintiffs is likely to be significant in scope and expensive to comply with." *Negrete*, 2015 WL 8207466, at *2; *Boelter*, 2016 WL 361554 , at *5 (granting stay where "the breadth of discovery is broad, and the burden of responding to Plaintiff's propounded discovery requests, let alone the requests she may make in the future, is substantial"). But in addition to the usual concerns about the expense and time required to respond to discovery, courts also consider unique burdens that may arise given the nature of the discovery sought or the particular circumstances of the case, including the potential for commercial harm. *See Spencer Trask*, 206 F.R.D. at 368 (staying discovery where both "expense [of discovery] and possible injury to the success of defendants' current contractual negotiations are great"); *Niv v. Hilton Hotels Corp.*, No. 06 CIV. 7839 (PKL), 2007 WL 510113, at *2 (S.D.N.Y. Feb. 15, 2007) (staying discovery where possibility that litigation may proceed in

a foreign country meant completely different translations and types of discovery might ultimately be required).

The inevitable scope and expense of discovery in this case weighs in favor of a stay, as does the potential harm to Bolt by having to disclose its proprietary information and trade secrets. As an initial matter, Plaintiffs have already requested wide-ranging discovery in their initial requests. Among Plaintiffs' 53 initial requests for document production are broad requests for documents and communications relating to each of the operative agreements in the case (Requests 3-6); "Documents and Communications concerning the allocation of human and other resources among Bolt's projects" (Request 7); "Documents and Communications concerning the development, delivery, or deployment of a minimum viable product or 'MVP' for AllPass" (Request 11); "Documents and Communications concerning development of the Bolt Underlying Technology (Request 20); "Documents and Communications concerning Bolt+" (Request 24); "All drafts of any agreement between Bolt and Shopify" (Request 29), and many others. *See generally* Jobe Decl. Ex. A.

These requests will be burdensome and expensive to comply with. Discovery related to the contracts, for instance, implicates a months-long period of negotiations, including negotiations surrounding the parties' original Referral Agreement in 2019 (in which the parties agreed to a very different structure, whereby ABG could earn a much smaller number of warrants simply for referrals—a structure they completely revamped for the AllPass Program Agreement and 2020 Warrant). This will involve significant document production alongside a time-consuming, multi-level privilege review and preparation of what are likely to be lengthy privilege logs by both sides. Ultimately, this disclosure may well prove to be a waste in light of the unambiguous contract provisions at issue in the case that may well be resolved as a matter of law. *Law Debenture Tr. Co.*

*of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) ("[A] written agreement that is complete, clear and unambiguous on its face must be interpreted according to the plain meaning of its terms, without the aid of extrinsic evidence." (cleaned up)).

Plaintiffs are also seeking a broad swath of discovery into Bolt's internal processes and actual development, testing, and refining of Bolt's highly valuable, proprietary technology. *See, e.g.*, Jobe Decl. Ex. A, at Requests 2, 7, 11, 20, and 22-26. Not only will these requests be burdensome to comply with in terms of time and expense, they also have the potential to harm Bolt by forcing it to disclose sensitive commercial information to a company with whom Bolt's business relationship has broken down to the point of litigation. Plaintiffs are not entitled to seize a chunk of Bolt for themselves through an unearned exercise of the Warrant, and they similarly should not be permitted—at least this stage—to peek under the hood at Bolt's trade secrets when their claims may be dismissed in short order. Because the disclosure process in this case will be time-consuming, expensive, and may require Bolt to disclose highly confidential and sensitive commercial information, the second factor weighs in favor of a stay as well.

## III.   PLAINTIFFS WOULD SUFFER NO PREJUDICE FROM A BRIEF STAY

A brief stay while the Court resolves Bolt's motion to dismiss will result in no prejudice to Plaintiffs. "The passage of a reasonable amount of time, without any other form of attendant prejudice, cannot itself constitute prejudice sufficient to defeat a motion to stay discovery." *O'Sullivan v. Deutsche Bank AG*, No. 17-CV-8709 (LTS), 2018 WL 1989585, at *9 (S.D.N.Y. Apr. 26, 2018) (granting stay even where it "may delay the case by as much as one year"); *Rivera v. Heyman*, No. 96 Civ. 4489, 1997 WL 86394, at *1 (S.D.N.Y. Feb. 27, 1997) ("A stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue.").

Bolt's motion to dismiss will be fully briefed by next month and likely will be decided within a typical timeframe thereafter, depending on the Court's schedule. Plaintiffs are not seeking a preliminary injunction, TRO, or other form of expedited relief that would require discovery to proceed immediately. Nor is there any other exigency that would tip the balance away from a stay where Bolt has otherwise presented substantial arguments for dismissal and where full-fledged discovery would result in significant expense and burden. Indeed, that this case is still in a nascent stage highlights the unlikelihood of prejudice from delaying the start of discovery by, at most, a few months while the Court decides whether Plaintiffs' claims are even viable. *See Negrete*, 2015 WL 8207466, at *2 ("Any prejudice stemming from delay is likely to be minimal in any event, since this case is in its infancy."); *see also Spinelli*, 2015 WL 7302266, at *2 (granting stay in case that was "already two years old" in part because "stay may … simplify[] and shorten[] discovery by limiting the scope of the parties' inquiry to claims that have been established as potentially viable"). Consequently, the lack of any colorable prejudice to Plaintiffs weighs in favor of a stay.

## <u>CONCLUSION</u>

For the foregoing reasons, Bolt respectfully requests that the Court stay discovery in this action until the Court decides Bolt's motion to dismiss the First Amended Complaint.

DATED: March 18, 2022

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By: */s/ Adam Wolfson*
Richard I. Werder, Jr.
Adam Wolfson
Victoria Parker (*pro hac vice forthcoming*)
Phillip B. Jobe

51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
(212) 849-7000

*Attorneys for Defendant Bolt Financial, Inc.*